IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNIFER EOFF and JULIE TINKHAM, individually and on behalf of all others similarly situated,**<br><br>             **Plaintiffs,**<br><br>v.<br><br>**SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM, L.P. d/b/a SPRINT NEXTEL,**<br><br>             **Defendants** | Civil Action No. 2:10-cv-01190 (SDW) (MCA) |

### OBJECTIONS OF KATHERINE FRANCO, FATIMA DOREGO AND ROBERT BYRNE TO PROPOSED SETTLEMENT AND <u>NOTICE OF INTENT TO APPEAR</u>

COME NOW, KATHERINE FRANCO, FATIMA DOREGO and ROBERT BYRNE ("Objectors") Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the December 10, 2012, final approval hearing, and request awards of incentive fees for their role, if any, in improving the settlement for the benefit of the class members.

Objectors represent to the court that they are Class Members, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT.

Objectors make the following objections:

**I.   <u>SETTLEMENT CLASSES REQUIRE HEIGHTENED SCRUTINY</u>**

The proposed settlement is a settlement class whereby Class Counsel seeks to certify a class for settlement purposes only.  The Court of Appeals for the Third Circuit in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig*.("G.M.C.") has recognized "the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."  55 F.3d 768, 805 (3d Cir. 1995).  This is because "[p]rior to formal class certification, there is an even greater potential for breach of fiduciary

duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935, 946 (9th Cir. 2011). And "[w]ithout the benefit of more extensive discovery, both sides may underestimate the strength of the plaintiffs' claims." *G.M.C.* 55 F. 3d at 789.

Pre-class certification settlements demonstrate that class counsel in the interest of a large fee have an "incentive to act earlier than their clients would deem optimal" in this situation. *Id*. at 802. This behavior is backed by many studies which have demonstrated that pre-class certification classes result in a class member receiving substantially less than class members in post-certified classes. See, e.g., The Federal Judicial Center, "An Empirical Study Of Class Actions In Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (Draft)" January 17, 1996. As a result, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth* 654 F. 3f at 946 (citing *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998).

## II. <u>IT WAS LEGAL ERROR TO SET THE OBJECTION DEADLINE BEFORE LEAD COUNSEL FILED THEIR FEE APPLICATION</u>

In this Court's Preliminary Approval Order, this Court ordered Class Counsel to file their Fee Petition on or before November 9, 2012. (Exhibit A ¶ 22). In that same order, this Court ordered any objector to the settlement to file their objection with the court by October 26, 2012. (Exhibit A ¶ 23). As of October 26, 2012, the objection deadline, no Fee Petition is on file with the court.

Fed. R. Civ. P. 23(h)(2) grants class members the right object to any motion for attorney's fees filed in connection with a class action settlement. By setting the Fee Petition deadline two weeks after the objection deadline, this Court committed legal error.

*In re Mercury Interactive Corp. Securities Litigation*, the Ninth Circuit Court of Appeals was faced with exactly this procedure. 618 F. 3d 988, 993-94 (9th Cir. 2010). The Ninth Circuit found it was an error of law for the district court to set the objection deadline before the date the motion for attorneys' fees was due because the plain language of Rule 23

grants Class Members an opportunity to object to the Fee Petition.  *Id*.  The court went on to say denying this opportunity "borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion."  *Id* at 993.

In this case, Class Counsel's Fee Petition was not on file by the objection deadline.  As the Ninth Circuit recognized, this practice deprives Class Members a fair opportunity to review the motion and lodge any objections as is required by rule 23.  *Id* at 993-94.  Due to this error, this Court must grant Class Members another opportunity to object once the Fee Petition is on file.  This Objector requests the court to grant Class Members at least ten days to respond to the motion pursuant to L. Civ. R. 7.1.

**A.  The Coupon Portion Is Essentially Valueless**

A "coupon settlement" is one where the relief is "a discount on another product or service offered by the defendant in the lawsuit."  *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010).  Aside from the three million dollar ($3,000,000) common fund, Defendants are offering the Class Members a "coupon settlement".[1]

These settlements are generally disfavored due to the three common problems they pose: "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation."  *American Honda Motor Co.*, 749 F. Supp. 2d at 1069 (citing *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007)).  For this reason, when a coupon settlement is proposed to the court, "it must discern if the value of a specific coupon settlement is reasonable in relation to the value of the claims surrendered."  *Id*  at 1070.

These three problems are amplified in this proposed settlement.  The first "non-cash" benefit offered is "three months of domestic unlimited data usage on the Sprint 3G network for participating Claimants who are not already on a plan that includes data and who have a wireless device that is capable of operating data services, and who accept service pursuant to

---

[1] The "Non-Cash Benefits" are (a) three months of unlimited date usage with varied limitations;(b) waiver of the $36 activation fee when activating a new Line of Service; (c)a $20 credit adjustment for customers who still have outstanding balances but no longer maintain an active account; and (d) a gift card or certificate for use in Sprint-owned retail locations. (Exhibit B pgs. 22-23).

Sprint's then-current Terms and Conditions of Service, and in compliance with Sprint's policies, including Sprint's Use and Privacy policies." (Exhibit B pg. 22). This clause is riddled with contingencies, ambiguities and uncertainties. For instance, how many Class Members actually have a phone capable of data usage that are not on a data plan already? What are Sprint's Terms and Conditions of Service that must be accepted? Would this require those customers who qualify to commit to a data plan of longer than 3 months (thereby benefitting Sprint)? How much does Sprint value this option at?[2]

The Second option, "a waiver of the $36 activation fee when activating a new Line of Service," is equally troubling as the number of Class Members that this may actually benefit is extremely limited. It also requires future participation with Sprint. (Exhibit B pg. 22). The problem that few Class Members will benefit is present in the third option. It states, "for participating Class Members who no longer maintain an active account and have an outstanding account balance in excess of $20.00, a credit adjustment in the amount of up to $20.00." Finally, the gift card option requires Class Members to conduct future business with Sprint – and only permits customers to use them at physical stores to make it less convenient and cause less to be redeemed.

The Class Action Fairness Act of 2005 ("CAFA") echoes these concerns about "coupon settlements" and instills a limitation on attorney fee awards in these cases: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712.

Each of these supposed "Non-Cash" benefits suffers from one or more of the flaws many courts have recognized are present in coupon settlements. Also, the ambiguity of the Settlement Agreement renders these benefits even more dubious. Before this court may approve this proposed settlement as fair, reasonable and adequate, it must flesh out these

---

[2] The Settlement Agreement states that "in no event shall the total face/retail value of the Non-Cash Benefits provided under this Agreement exceed $8.0 million."

4

uncertainties to provide an understanding of how these "Non-Cash" benefits will play out and how many class members actually qualify for them.  This Court should also require both parties to amend the Settlement Agreement to reflect these clarifications, as this Agreement is the only legally enforceable instrument for class members.

### III. THE PROSPECTIVE RELIEF IS AMBIGUOUS AND EXAGGERATED

This Court must scrutinize Class Counsel's claims regarding alleged value for the class through their prospective relief.  Sprint agreed for two years certain qualified Sprint customers will benefit from the "Data Drop Rule."  (Exhibit B p. 20).  By some undisclosed formula, this relief is valued at $8.0 million.  (Exhibit B p. 8).  The Data Drop Rule is an agreement not to charge certain Sprint customers for data usage so long as they don't use over a specified amount within a specified period of time.  *Id.*  How exactly the parties valued the Data Drop Rule at $8.0 million is questionable.  How can we value *not changing* a policy when we don't know anything about the changes Sprint *would have* made?  Would they have changed the amount of data usable within the time period?  Would they have shortened the time period?  If so, what would the difference have been?  Would they have eliminated it completely?

Aside from its nebulous value, the benefits of the Data Drop Rule and the rest of the "Prospective Relief" is not directed toward the class.  According to the Settlement Agreement, **all** Sprint CDMA customers on a Messaging Plan with an Individual Liable Account will benefit from this Data Drop Rule.  Similarly, the rest of the provisions under this segment of the agreement pertain to all Sprint customers with Messaging Plans or other Sprint customers.  There is no benefit directed towards the Class Members.

With such a tenuous tie to the Class Members questionable measure of value to the class, this court should not give much weight, if any, to the "Prospective Relief" in evaluating this settlements adequacy.

/ / /

## IV. THE CASH BENEFIT WILL BE DENIED TO MANY CLAIMANTS UNFAIRLY

The settlement agreement states:

No Settlement Class Member will be entitled to a Cash Benefit if the Settlement Class Member has an **outstanding balance** on his or her Wireless Service Account, excluding any balance for Casual Data Charges, that is in excess of $20.00, or never paid to Sprint any amounts for Casual Data Charges.
(Exhibit 2 at p. 24) emphasis added.

"Outstanding balance" has not been defined in the agreement. The common use of the word "outstanding balance" could include any balance on your account, regardless of whether it is past due. The result, then, is that Class Members who happen to submit their claim for review during the period in between receiving their bill and paying it off will be denied the Cash Benefit. This result is arbitrary, unfair and designed to limit the number of cash claimants. Again, because the settlement agreement is the only legally enforceable document, this Court cannot approve the proposed settlement as fair, adequate and reasonable.

### A. A Conflict Of Interest Exists Between Class Members

The Class Members must be divided into subclasses between Class Members with one Line of Service who were overcharged on their Wireless Service Account and Class Members with more than one Line of Service who were overcharged on more than one Line of Service on their Wireless Service Account.

The Settlement Agreement provides:

No Settlement Class Member shall receive, and the Common Fund shall not be debited for (and Sprint shall not be required to provide), more than one Settlement Benefit per eligible Settlement Class Member even if the Settlement Class Member qualifies for a Settlement Benefit under more than one category. Settlement Class Members who have more than one Line of Service may only obtain one Settlement Benefit for each Wireless Service Account, and not for each Line of Service.
(Exhibit B p. 25)

In effect, it doesn't matter how many lines were overcharged because Class Members can only recover once per Wireless Service Account. This creates an evident conflict of interest between those Class Members who will benefit because other Class Members'

6

recovery is arbitrarily cut off even though they have suffered proportionally more harm than other Class Members. In effect, this subclass is not being adequately represented by Class Counsel and they are entitled to separate representation to advocate for their best interests.

### B. This Settlements Contains Warnings Signs of Collusion

A collusive settlement agreement is not usually obvious on its face – it usually requires the court to look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth* 654 F.3d at 947 (citing cases). These signs are:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded,"(citing cases);
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,"(citing cases);  And
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."
> *Id.*

All three are present here. Despite Class Counsel's incorrect proposition that somehow their fee award (which will be unopposed and up to $3.5 million) is separate and apart from any relief available to the class, many courts recognize this simply is not true. *G.M.C.* 55 F.3d at 821. ("defendant is interested only in disposing of the total claim asserted against it…the allocation between the class payment and the attorneys' fees is of little or no interest to the defense."); *see also Staton v. Boeing Co.*, 327 F. 3d 938, 971 (9th Cir. 2003) (Same). With that in mind, the Class is only entitled to $3 million (minus costs and expenses) as long as a valid claim is made, or the other Non-Cash coupon benefits. What is worse, each of these benefits is uncertain because of the contingencies, limitations and ambiguities in the Settlement Agreement.

Another sign of collusion is that Class Counsel negotiated for a "clear sailing agreement." (Exhibit B p. 36). "The very existence of a clear sailing provision increases the likelihood that class counsel have bargained away something of value to the class." *Bluetooth* 654 F.3d at 948. It also "by its nature deprives the court of the advantages of the adversary process [by eliminating the defendant at the fairness hearing]." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 525 (1st Cir. 1991).

Finally, any "coupon" value reverts back to the defendants once they are unused.

These three warning signs presence, along with the ambiguous language of the Settlement Agreement that likely severely limits the number of valid claimants and gives Defendants the opportunity to arbitrarily deny settlement claims must lead this court to deny the settlement – particularly under the heightened level of scrutiny standard this Circuit has adopted. See *G.M.C.* 55 F.3d at 805.

## V. ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

These Objectors join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporates them by reference as if they appeared in full herein.

## VI. CONCLUSION

**WHEREFORE**, these Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the unfairness, inadequacies and unreasonableness of the proposed settlement and request for fees;

/ / /

/ / /

      C.      Award an incentive fee to these Objectors for their service as named representatives of Class Members in this litigation.

Dated:   October 26, 2012          By: /s/Forrest S. Turkish
                                                    Forrest S. Turkish (FT1197)
                                                  Law Office of Forrest S. Turkish
                                                  595 Broadway
                                                  Bayonne, NJ 07002
                                                  Phone: (201) 339-8866 / Fax: (201) 339-8456
                                                  Email: Fsturkish@aol.com
                                                  Attorneys for Objectors Katherine Franco,
                                                  Fatima Dorego and Robert Byrne

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States District Court of New Jersey by using the USDC CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.

                                                  /s/ Forrest S. Turkish
                                                  Forrest S. Turkish